(103 So. 32)

No. 24918.

## BARBRE v. MORGAN.

(Feb. 2, 1925.)

*(Syllabus by Editorial Staff.)*

**Libel and slander ⟶56(1)—Facts held to establish justification for charge intended.**

In action for slander based on charge by defendant that plaintiff had "stolen the government's oats," facts *held* to establish justification according to sense in which words were used.

Appeal from Twenty-First Judicial District Court, Parish of Pointe Coupee; William C. Carruth, Judge.

Action by Steve Barbre against W. E. Morgan. Judgment for defendant, and plaintiff appeals. Affirmed.

Albin Provosty and Bouanchaud & Kearney, all of New Roads, for appellant.

Claiborne & Claiborne, of New Roads, for appellee.

ST. PAUL, J. This is an action of slander: Plaintiff claims that in the month of October, 1919, and again on several occasions in the month of January, 1920, defendant charged him (plaintiff) with having "stolen the government's oats." The defense is, substantially, justification according to the sense in which the words were used; and that said words had been used in the heat of a political campaign.

There was a trial by jury, and verdict for defendant; from which plaintiff appeals.

### I.

Plaintiff and defendant both reside in the First ward of the parish of Pointe Coupee, and both take an active interest in the politics thereof. In the Democratic Primaries of January, 1920 (the campaign for which began about October, 1919), one H. T. Brooks was a candidate for police juror from said ward, and had for opponent one A. A. Desselle. Plaintiff was an ardent supporter of Desselle, and defendant an equally ardent supporter of Brooks. And on several occasions during that campaign defendant, in an effort to take away votes from Desselle whom plaintiff was supporting, and get said votes for Brooks whom defendant was supporting, did say that plaintiff had "stolen the government's oats," "had received a lot of government oats for distribution, and had

used or kept them for himself," and other words of like import.

## II.

The reason and meaning of these expressions may readily be gathered from the following extracts from the testimony of defendant, viz.:

"Mr. Desselle was running for police juror in our ward, and Mr. Brooks was opposing him. Down in my end of the ward I was supporting Mr. Brooks. When Mr. Desselle came to my house to canvas me for my support, I told him that I was not supporting him; furthermore, that he could not win because of the fact that Mr. Barbre had brought him out, and the people had no confidence in Mr. Barbre since the transaction of the government oats. And I explained that Mr. Barbre had received government oats in 1912 and did not satisfactorily distribute them to the people, and they were very sore about it; and * * * Mr. Desselle could not win because of that fact. * * * I did not state to Mr. Desselle that Mr. Barbre had kept *all* of these government oats, but I did state that he had kept some of the oats. * * * Yes, I told Mr. Hamilton that he (Barbre) had taken some government oats. * * * I made the statement (to Mr. Evans) that it was my belief that he (Barbre) had stolen some of the government oats, and that I would continue to say so. * * * "

## III.

Some time in the year 1912 there was a "crevasse" in that section of the state; that is to say, the Mississippi burst through its dikes and overflowed the surrounding country. The government sent some relief for the destitute; it sent to plaintiff (among others) 60 sacks of oats for distribution among the more needy inhabitants. Only 57 sacks reached plaintiff. Of those he kept 5 sacks for himself, sent 5 sacks to a brother-in-law, 5 sacks to one half-brother, and 5 sacks to another half-brother. He gave 3 sacks to one Kennerley, a storekeeper, 3 sacks to one Haygood, a levee inspector, 8 sacks to one Harmanson, a planter, and 4 sacks to one Barnett, a merchant and farmer. He also gave 5 sacks to one Dave Scott, a colored team owner and subcontractor for some of the levee work which plaintiff was then doing.

The recipients of these 44 sacks seem not to have been of the class of those who might be dependent on government assistance. The other 13 sacks seem to have gotten into the hands of persons apparently more entitled to public aid. But the consequence of this method of distribution was that many needy persons did not receive any part of the oats intended for the relief of persons in their situation.

## IV.

This is the substance of the facts which were laid before the jury. They were impaneled on October 29, 1920; the evidence was taken before them on May 2 and 3, 1921; the case was submitted to them *without argument* on June 22, 1921; and on the same day they returned an unanimous verdict for defendant.

## V.

From the foregoing it is clear that the language of defendant (used in the heat of a political campaign) may have been stronger than called for by the circumstances; but the evidence shows that it was understood by those who heard it as referring to this distribution of government oats as made by plaintiff, and the keeping of part of them for himself. The jury seem to have fully appreciated that such was the substance of defendant's charge against plaintiff and that in substance the charge has been justified. Indeed, there is hardly any controversy about the facts of the case, although the testimony covers some 300 pages of the transcript (less, perhaps, one-third thereof taken up by objections, arguments, and rulings on evidence); and the fact is that plaintiff well knew (as his petition shows) that such was the sum and substance of the charge made against

him by defendant, and yet came into court with his hands unclean thereof.

Our conclusion is that the justification was as broad as the charge intended; that the verdict of the jury is correct.

### Decree.

The judgment appealed from is therefore affirmed.